**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**

**UNITED STATES OF AMERICA,** | **CASE NO. 5:25-CR-631**

**Plaintiff,**

**-vs-**

**JUDGE PAMELA A. BARKER**

**DAQUAN L. DAVENPORT,**

**Defendant.**

**MEMORANDUM OPINION & ORDER**

This matter is before the Court upon Defendant Daquan L. Davenport's ("Defendant" or "Davenport") Motion to Suppress (Evidentiary Hearing Requested) filed on June 16, 2026. ("Defendant's Motion"). (Doc. No. 17.) On July 15, 2026, the United States of America filed its Response in Opposition to Defendant's Motion ("the Government's Opposition"), and on July 22, 2026, Defendant filed his Reply in Support of Defendant's Motion ("Defendant's Reply"). (Doc. Nos. 22, 27.) For the reasons set forth below, Defendant's Motion is DENIED.

## I. Procedural History

On December 17, 2025, a grand jury for the Northern District of Ohio returned an Indictment charging Davenport with: Possession with Intent to Distribute Methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(viii) (Count 1); Possession with Intent to Distribute Fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(vi) (Count 2); Felon in Possession of a Firearm and Ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8) (Count 3); and Possession of a Firearm in Furtherance of a Drug Trafficking Offense, in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count 4). (Doc. No. 1.)

The charges stem from law enforcement's execution of a search warrant for Davenport's residence located at 772 Mallison Avenue, Akron, Ohio, ("the residence") which was signed by a judge of the Summit County Court of Common Pleas and supported by an Affidavit from Akron Police Narcotics Detective Justin Morris ("the Affidavit"). (Doc. No. 26-1.) In Defendant's Motion, Davenport seeks to suppress the drugs and firearms found and seized at the residence, arguing that the information in the Affidavit that connected him to the residence was stale. In Defendant's Motion, Davenport requested an evidentiary hearing, but subsequently, counsel for the parties jointly advised the Court that an evidentiary was not necessary and that this Court's review is limited to the four corners of the Affidavit when evaluating Defendant's Motion. Indeed, because in Defendant's Motion Davenport contends that the Affidavit did not establish probable cause to issue the warrant, the Court limits its evaluation to the four corners of the Affidavit. *See United States v. Rose*, 714 F.3d 362, 366 (6th Cir. 2013).

## II. The Affidavit

In the Affidavit, Detective Morris avers the following information.

He has been employed with the Akron Police Department for twenty-two (22) years and during that time he has received training in narcotics and firearms investigations and has participated in many narcotics investigations, to include as an undercover officer and/or through the use of confidential informants. (Doc. No. 26-1, PageID #s 94-95.)

Three controlled purchases of drugs by a confidential source that he considered reliable, "CS-1" took place between Davenport and CS-1 at the residence. (*Id.*, PageID #s 101-03.) The most recent of the three controlled buys took place seven days prior to the application for the warrant and involved a quantity of fentanyl, and the other two controlled purchases occurred in January 2025 and

November 2024 and both of those involved quantities of methamphetamine. (*Id.*) For each of the three controlled purchases, and as directed by investigators and while under their supervision, CS-1 contacted Davenport by phone to order a particular type[1] and quantity of drugs and on each of the three occasions Davenport instructed CS-1 to meet him at the residence. (*Id.*) While conducting surveillance of the residence during the three controlled buys, investigators saw Davenport exit the front door of the residence and meet with CS-1 and engage in a drug transaction. (*Id.*)

While conducting surveillance of the residence during the controlled buy that took place seven days prior to making application for the search warrant, investigators observed a red 2025 Kia K4 (Ohio registration KNC2636) registered to Davenport in the driveway of the residence. (*Id.*, PageID # 101.) As Davenport points out in Defendant's Motion, the information supplied in the Affidavit relative to this controlled buy did not include an averment that investigators observed Davenport go back into the residence after this controlled buy had taken place. (*Id.)*

While conducting surveillance of the residence during the controlled buy that took place during the month of January 2025, investigators observed a red 2025 Kia K4 parked in the driveway at the residence and were aware from surveillance operations that Davenport was known to operate the red Kia K4. Immediately after this controlled purchase, investigators watched Davenport return into the residence. (*Id.*, PageID # 102.)

While conducting surveillance of the residence immediately prior to the controlled buy conducted during the month of November 2024, investigator(s) observed Davenport depart from the residence in a Hyundai Sonata, and then return to the residence, at which time he entered the front

---

[1] The first controlled buy in November 2024 and the second controlled buy in January 2025 involved CS-1 ordering Methamphetamine, and the controlled buy seven days before the application for the search warrant was made involved CS-1 ordering fentanyl.

door of the residence. Immediately after witnessing this November 2024 controlled buy, investigators also observed Davenport immediately return into the residence. (*Id.*, PageID # 103.)

Between November 2024 and the seven days prior to making application for the warrant, investigators performed physical and/or electronic surveillance on Davenport and the residence and during the surveillance Davenport was observed traveling to and from the residence numerous times and on a daily basis. (*Id.*) Also, the investigators observed Davenport operating a red 2025 Kia K4 (Ohio registration KNC2636) which was registered to Davenport and that vehicle was observed parked in the driveway of the residence during the late night and early morning hours on a daily basis. (*Id.*) And investigators observed Davenport frequently traveling to other drug locations in Akron, Ohio, that were under surveillance and investigation.

## III. Law and Analysis

### A. Probable Cause Standard

The Fourth Amendment provides that "no [w]arrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "[P]robable cause exists when an affidavit shows a 'fair probability' that criminal evidence will be found in the place to be searched." *United States v. Moore*, 999 F.3d 993, 996 (6th Cir. 2021).

Stale information cannot support probable cause. *United States v. Spikes*, 158 F.3d 913, 923 (6th Cir. 1998). "But information is not stale merely because some time has passed since the relevant events occurred." *United States v. Pointer*, 2022 U.S. App. LEXIS 35506 at *19 (6th Cir. Dec. 20, 2022). Rather, courts look to the following factors to determine whether the information is too stale to support probable cause:

> (1) the character of the crime (chance encounter in the night or regenerating conspiracy?) (2) the criminal (nomadic or entrenched?) (3) the thing to be seized (perishable and easily transferrable or of enduring utility to its holder?) (4) the place to be searched (mere criminal forum of convenience or secure operational base?).

*Id*. (quoting *United States v. Abboud*, 438 F.3d 554, 572-73 (6th Cir. 2006)). In the drug trafficking context, "staleness concerns are lessened where there is 'information indicating an ongoing and continuing narcotic operation.'" *Id*. (quoting *United States v. Frechette*, 583 F.3d 374, 378 (6th Cir. 2009)).

In applying the above probable cause standard, "the [issuing] magistrate uses a practical standard, based on factual and practical considerations of everyday life, rather than a technical standard." *United States v. Sneed*, 385 F. App'x 551, 556 (6th Cir. 2010) (citing *United States v. Brooks*, 594 F.3d 488, 492 (6th Cir. 2010)). Courts should "accord the magistrate's determination" of probable cause "'great deference.'" *United States v. Kinison*, 710 F.3d 678, 682 (6th Cir. 2013) (quoting *United States v. Terry*, 522 F.3d 645, 647 (6th Cir. 2008)). The question is "whether the magistrate had a substantial basis for his conclusion" that probable cause existed. *United States v. Christian*, 925 F.3d 305, 310 (6th Cir. 2019).

For the following reasons, the Court concludes that the probable cause in the affidavit to search the residence was not stale. As an initial matter, the controlled buy at the residence seven days before the application for the warrant was made on April 1 was "not particularly remote." *Pointer*, 2022 U.S. App. LEXIS 35506 at *20, *See id.* (finding controlled buys that occurred "less than a year" to "two months" before a search warrant was executed not stale). Additionally, approximately two and four months before this March 2025 controlled buy, investigators had observed two other controlled buys between Davenport and CS-1 on the porch of the residence and watched Davenport come out of the house and return into it after meeting with CS-1 and engaging in the drug transaction.

Before the January 2025 controlled buy, investigators saw the red Kia registered to Davenport parked in the driveway. Also, before the November 2024 controlled buy, investigators observed Davenport driving a Hyundai leave the residence and return to it and then Davenport going back into the residence through the front door. They also observed him leave the residence and frequently travel to other drug locations in Akron, Ohio that were under surveillance and investigation. And CS-1, who Detective Morris averred to be reliable, advised investigators that Davenport was actively selling drugs from the residence. Together, these facts suggest that the residence was more than a "mere criminal forum of convenience" for Davenport and closer to a "secure operational base." *See United States v. Sinclair*, 631 F. App'x 344, 348 (6th Cir. 2015) (finding a location "closer to a 'secure operational base'" where law enforcement observed the defendant at the location four times and observed him using a key to gain entry).

Taken together, this information demonstrates that the residence was a "secure operational base" for Davenport's ongoing drug trafficking operation. *United States v. Hython*, 443 F.3d 480, 485 (6th Cir. 2006). Accordingly, the issuing judge had a substantial basis to conclude that probable cause existed to search the residence. *See Sinclair*, 613 F. App'x at 348 (finding a fifteen-day span between the last observation of the defendant at the searched address and the issuance of the affidavit insufficient to defeat probable cause). Thus, the more recent controlled buy and observations of Davenport by investigators refreshed the CS's earlier reports that Davenport sold drugs out of the residence and the two prior controlled buys in November 2024 and January 2025 that investigators personally observed. *See United States v. Thomas*, 605 F.3d 300, 310 (6th Cir. 2010) ("[I]nformation from an informant that is otherwise stale may be 'refreshed' if the affidavit contains 'recent information [that] corroborates otherwise stale information'.").

### C. The Good-Faith Exception

The good-faith exception applies when law enforcement "conduct a search in 'objectively reasonable reliance' on a warrant later held invalid." *Davis v. United States*, 564 U.S. 229, 238-39 (2011) (quoting *United States v. Leon*, 468 U.S. 897, 922 (1984)). The question is "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's decision." *United States v. White*, 874 F.3d 490, 496 (6th Cir. 2017).

A well-trained officer would have known that the search was illegal in the following four instances:

> [1] [I]f the magistrate . . . was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth . . . [2] where the issuing magistrate wholly abandoned [her] judicial role . . . [3] [where] a warrant [is] based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable . . . [and [4] where] a warrant [is] so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid.

*United States v. Moorehead*, 912 F.3d 963, 968 (6th Cir. 2019) (quoting *Leon*, 478 U.S. at 923).

"The good-faith standard is 'less demanding' than the 'threshold required to prove the existence of probable cause.'" *United States v. Powell*, 603 F. App'x 475, 477 (6th Cir. 2015) (quoting *United States v. Carpenter*, 360 F.3d 591, 595 (6th Cir. 2004)). All it requires is that the affidavit establish "*some* connection, regardless of how remote it may have been, between the criminal activity at issue and the place to be searched." *United States v. Laughton*, 409 F.3d 744, 750 (6th Cir. 2005).

Davenport argues that the good-faith exception does not apply because the Affidavit merely "relies on a mere hunch that evidence of drug trafficking would be found at the Mallison Avenue

address." (Doc. No. 27, PageID # 122.) However, the Affidavit established "*some* connection" between the residence and Davenport's drug dealing for law enforcement to reasonably believe that the residence contained evidence of drug offenses. *Laughton*, 409 F.3d at 750. All three controlled buys involved CS-1 advising investigators that Davenport was trafficking drugs from the residence before the controlled buys took place. As to each of the three controlled buys, CS-1 called Davenport who directed him to come to the residence for the purchase of methamphetamine and then fentanyl. When CS-1 arrived each time, Davenport came out of the residence and engaged in the drug transaction and as to the first and second controlled buys, investigators observed Davenport return into the residence. From these facts, it was reasonable for law enforcement to believe that Davenport was using the residence "to store drugs and otherwise further [his] drug trafficking." *United States v. Williams*, 544 F.3d 683, 687 (6th Cir. 2008). Lastly, the third controlled buy seven days before the application for the warrant was made at least confirmed that Milton was still involved in an ongoing drug trafficking operation. And since there was seven days between the last controlled buy at the residence and Detective Morris's signing of the Affidavit and submission of it to the judge to secure the search warrant, it was reasonable for law enforcement to believe that Davenport was still using the residence for his drug trafficking operation. And, the lapse in time of approximately two to four months between November 2024 and January 2025 and the seven days before application for the search warrant was made was not so great that it would have "vitiate[d] [what Davenport appears to contend was a] minimally sufficient connection" that law enforcement already established between Davenport's continuing or ongoing drug dealing and the residence. *See United States v. Powell*, 603 F. App'x 475, 478 (6th Cir. 2015) (finding that "the affidavit was not sufficiently stale to vitiate the minimally sufficient nexus" where there was an eight-month time lag between when law enforcement

last observed drug activity at the residence and when they searched the residence). All told, law enforcement's reliance on the affidavit to search the residence was objectively reasonable.

## I. Conclusion

For the foregoing reasons, the Court denies Defendant's Motion is DENIED. (Doc. No. 17.)

**IT IS SO ORDERED.**

Dated: August 20, 2026

*s/ Pamela A. Barker*
PAMELA A. BARKER
UNITED STATES DISTRICT JUDGE

**IT IS SO ORDERED.**

*s/Pamela A. Barker*
PAMELA A. BARKER
U. S. DISTRICT JUDGE

Date: August 20, 2026